UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JODY YOUSIF,

        Plaintiff,

v.                                                                                           CASE No. 8:12-cv-00124-T-23MAP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of the Commissioner's decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") payments. Essentially, Plaintiff argues the administrative law judge ("ALJ") made multiple errors at every step of the sequential evaluation process, excluding step one. He also argues the ALJ failed to properly evaluate new evidence, evaluate the medical opinions of Plaintiff's treating and consultative physicians, proffer interrogatories to counsel, develop the record, utilize the 11th Circuit pain standard, and analyze lay opinion. I find each argument fails to provide reason for administrative remand. Accordingly, I recommend this complaint be dismissed and the Commissioner's decision affirmed.[1]

---

[1] The district judge referred the matter to me for a report and recommendation. Local Rule 6.01(c)(21).

*A. Standard of Review*

To be entitled to DIB or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (i.e., one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's residual functional capacity ("RFC"), whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of

her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

*B. Background*

Plaintiff, who was forty-nine years old at the time of his administrative hearing, has two years of college education and work experience as an insurance salesman (Tr. 10, 20, 32, 170-71). He alleges he has been unable to work since January 1, 2002, due to his bypass surgery, depression, bipolar (gastric bypass complications), anemia, ademia, kidney

3

problems, and acid reflux (Tr. 10, 169). The ALJ found some of these impairments "severe," but did not specifically address them all. Instead, he found at step two of the sequential analysis that Plaintiff suffered from severe impairments of status post-gastric bypass surgery, major depressive disorder, panic disorder, personality disorder, and anxiety; none qualified as a listed impairment in C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12, 14). At step four, he assessed Plaintiff retained

> the residual functional capacity ("RFC") to perform light work . . . except the claimant can occasionally lift 20 pounds and frequently lift 10 pounds. He can sit up to six hours in an eight-hour day and can stand and walk up to six hours in an eight-hour day. He is limited to performing work with only simple, routine tasks and can handle only ordinary and routine changes in work setting or duties. He should not perform rapid production rate or pace/quota work and he can have only occasional interaction with the public, coworkers, and supervisors. Moreover, he can maintain attention and concentration for only two hours, but then requires a 10-minute break, [which excluded him from past relevant work].

At step five of the analysis, and with the assistance of a vocational expert, the ALJ found the Plaintiff could make a successful adjustment to other work (Tr. 19-21). As such, the ALJ found the Plaintiff was not disabled (Tr. 21). The Plaintiff challenges these conclusions and raises additional concerns discussed below disputing the ALJ's analysis of his case.

*C. Discussion*

*1. step two - severe impairment*

Plaintiff claims the ALJ erred at step two because his findings did not include the specific problems that emanate from a severe impairment of status post-gastric bypass

4

surgery. Step two requires only that the ALJ determine whether Plaintiff suffers from at least one severe impairment. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (holding "the finding of any severe impairment . . . whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe" is enough to satisfy step two). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 385 Fed.Appx. 823, 825 (11th Cir. 2010)(citing *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). Here, and as Plaintiff recognizes, the ALJ found Plaintiff suffered from several severe impairments including status post-gastric bypass surgery. *Id.* That finding alone satisfies the ALJ's obligation to determine Plaintiff's severe impairments. *Id.* Thus, the ALJ did not err at step two.

*2. step three - listings*

Plaintiff next argues the ALJ erred at step three by failing to find Plaintiff's mental impairments equaled the criteria listings 12.04 (affective disorders), 12.06 (Anxiety Related Disorders), and 12.08 (Personality Disorders). *See* Appendix 1, 20 C.F.R. Part 404, Subpart P. Plaintiff offers, at a minimum, his mental impairments satisfy criteria B of the listing because of Dr. Kanakis's opinion that Plaintiff had fair attention, poor concentration, poor insight, and poor judgment. The Commissioner counters that Plaintiff has failed to meet his burden to establish he has a listed impairment.

When a claimant contends he has an impairment that meets a listed impairment entitling him to an adjudication of disability, the claimant must present specific medical

5

findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative the claimant contends he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such equivalency. *Bell v. Bowen,* 796 F.2d 1350, 1353 (11th Cir. 1986). To meet or equal medical listings 12.04, 12.06, and 12.08, Plaintiff must show he has satisfied the requirements of both criteria A and criteria B. *See* Appendix 1, 20 C.F.R. Part 404, Subpart P. However, for listings 12.04 and 12.06, a claimant can instead satisfy the requirements of criteria C.[2] *Id.* Criteria B for listings 12.04, 12.06, and 12.08 requires evidence of marked restrictions in at least two of the following: activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.*

I can find no medical evidence in the record indicating Plaintiff's mental impairments cause marked limitations. Furthermore, Dr. Kanakis's ( a one-time examiner) opinion of Plaintiff alone does not establish that Plaintiff has marked restrictions, and Plaintiff has not pointed to any other evidence to establish that fact either. Clearly, the burden is his. *See Bell,* 796 F.2d at 1353. In fact, the record belies Dr. Kanakis's findings as not one of Plaintiff's remaining physicians opined that Plaintiff had any marked restrictions. Further, as the Commissioner points out, Plaintiff has not identified any evidence in the record

---

[2] Plaintiff does not raise an argument that he has satisfied criteria C and the Court can find no evidence that Plaintiff has satisfied criteria C. Thus, criteria C is of no consequence here.

6

establishing he has also satisfied criteria A of listings 12.04, 12.06, and 12.08. Therefore, the fact that Dr. Kanakis's report may have established Plaintiff met criteria B of those listings is irrelevant. *See* Appendix 1, 20 C.F.R. Part 404, Subpart P.

### *3. step four - RFC*

At step four, Plaintiff argues the ALJ erred by failing to utilize the proper standard to assess Plaintiff's RFC under Social Security Ruling 96-8p. The Commissioner maintains that the ALJ's RFC assessment is supported by substantial evidence.

Security Ruling 96-8p requires the ALJ to identify Plaintiff's RFC on a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities, and only after that may the RFC be expressed in terms of excertional levels of work, sedentary, light, medium, heavy, and very heavy. *Freeman v. Barnhart*, 220 Fed.Appx. 957 (11th Cir. 2007).

Here, the ALJ considered all of the evidence and found it did not support Plaintiff's claimed level of disability. In accessing Plaintiff's RFC, the ALJ adopted Dr. Holifield's, a state agency consultant, assessment that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand/walk six out of eight hours, sit six out of eight hours, and push/pull an unlimited amount. The ALJ found this assessment consistent with the other medical opinions including Dr. Andriole, Dr. Bingham, and Dr. Hanna who reported similar findings. The ALJ also addressed medical opinions concerning Plaintiff's mental limitations. For example, Dr. Young, a consultive examiner, opined that Plaintiff might have mild to moderate interference in his ability to work on a sustained basis due to his

7

psychiatric condition. Consequently, the ALJ adjusted Plaintiff's RFC to allow the claimant a break every two hours for ten minutes. He also incorporated Dr. Fuess's opinion that Plaintiff could perform only low stress, simple, and routine work with minimal public contact. This finding is consistent with Dr. Ragsdale and Dr. Conger's opinions Plaintiff should be limited to simple or routine tasks. Additionally, the ALJ addressed Plaintiff's subjective complaints by finding Plaintiff's statements relating to the seriousness of his limitations inconsistent with Plaintiff's description of his daily activities including his ability to bathe himself, complete some housework, cook, and drive. Finally, the ALJ addressed the lay testimony of Bridget Yousif, which I will address later. SSR 96-8p did not require the ALJ to do more. *Castel v. Astrue,* 2009 WL 42500063 *2 (11th Cir. 2009) (interpreting SSR 96-8p to require the ALJ to consider all relevant evidence when determining RFC, namely: medical history, medical evaluation, daily activities, and lay evidence). In short, the ALJ properly evaluated Plaintiff's RFC in accordance with SSR 96-8p.

### *4. step five - hypothetical*

Plaintiff next argues the ALJ erred at step five by posing an incomplete hypothetical that did not describe the problems associated with Plaintiff's status post-gastric bypass. Plaintiff further contends that the ALJ improperly stated that Plaintiff was able to have *occasional* contact with the public while Dr. Fuess opined Plaintiff was only to have *minimal* contact with the public (emphasis added). The Commissioner responds that the ALJ's hypothetical adequately described all restrictions the ALJ found supported by the record.

The ALJ must pose an accurate hypothetical that takes into account all the claimant's

8

impairments. *Wind v. Barnhart,* 133 Fed. Appx. 684, 694 (11th Cir. 2005); *Pendley v. Heckler,* 767 F.2d 1561 (11th Cir. 1985). The ALJ's hypothetical posed to a vocational expert must comprehensively describe the plaintiff's limitations. *Pendley*, 77 F.2d at 1563. Of course, the ALJ is not required to include limitations he does not find credible, and submits to the expert only those supported by objective evidence of record. *Crawford v. Comm'r of Social Security,* 363 F.3d 1155, 1160-61 (11th Cir. 2004); *McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987). Here, the ALJ included those limitations he found credible. When the ALJ posed his hypothetical he incorporated his RFC findings. As discussed above, the ALJ's evaluation of Plaintiff's RFC outlined Plaintiff's impairments the ALJ found credible. Accordingly, I find the ALJ's hypothetical included all relevant limitations in the hypothetical he posed to the vocational expert.

     *5. new evidence*

Plaintiff next argues that two pieces of evidence — a medical report from his treating physician, Dr. Hanna, dated March 9, 2011 ("March 9th Report") and a medical report from Largo Medical Center dated January 1, 2011 ("Largo Medical Report") — never made it to the District Court file or the record. As such, he contends the Court should consider these reports as new evidence, which are highly material to whether the ALJ provided Plaintiff's treating physician's opinions proper weight.[3] He maintains because the ALJ did not evaluate

---

[3] The Court is unclear if Plaintiff is making the same argument for both reports at issue here as Plaintiff mentions the Largo Medical report as missing from the record along with Dr. Hanna's report; but, unlike Dr. Hanna's report, the Plaintiff fails to argue whether Plaintiff considers the Largo Medical report new and material. As such, the Court will assume Plaintiff's argument applies to both reports. Otherwise, Plaintiff has

9

this new evidence, the Court should remand the case under sentence six. In response, the Commissioner states Plaintiff's evidence is not new, and even if new, would not change the outcome of this case. Thus, remand is unnecessary.

To warrant remand under sentence six, the Plaintiff must establish: (1) the evidence is new and noncumulative; (2) the evidence is material such that there is a reasonable probability it would change the administrative result; and (3) there was good cause for the failure to submit the evidence at the administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). "[N]ew evidence is material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *See Flowers v. Comm'r of Soc. Sec. Admin.*, 441 Fed.Appx 735, 745 (11th Cir. 2011).

Here, Plaintiff fails to meet the first required element, as neither the Largo Medical Report nor the March 9th Report constitute new evidence. The record reveals that both reports were already reviewed and evaluated by the Appeals Council. Indeed, the Largo Medical report is listed as an exhibit in the Appeals Council's order and Dr. Hanna's three-sentence statement in the March 9th Report was typed verbatim in Plaintiff's request to review the ALJ's decision and supporting memorandum sent to the Appeals Council.[4] In its

---

failed to make any arguments in support of why the Largo Medical report is at issue.

[4] In Plaintiff's request for review to the Appeals Council, Plaintiff stated "there is a medical source statement dated March 9, 2011 from Dr. Maher Hanna from the SunMed Primary Clinic. Dr. Hanna opined that due [to] the claimant's generalized weakness, the claimant would need supervision and not be left alone." (Tr. 126). This is the exact statement reflected in Dr. Hanna's March 9, 2011 report. *See* Pl's Mem, at pg. 16.

Case 8:12-cv-00124-SDM-MAP   Document 17   Filed 01/28/13   Page 11 of 19 PageID 485

order, the Appeals Council stated it considered the reasons Plaintiff disagreed with the ALJ's decision (Plaintiff's request for review) as well as the additional evidence and did not find the information provided a basis for changing the ALJ's decision. As such, the reports are not new evidence and remand under sentence six is unwarranted. *See Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("Sentence six allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously considered by the Appeals Council.").

*6. evaluation of medical opinions*

Next, Plaintiff contends the ALJ failed to explain the weight given to opinions of some of Plaintiff's treating physicians and failed to also mention their reports. Specifically, Plaintiff points to the Easter Seals ("Easter Report") and Baycare The Harbor ("Baycare Report") medical reports. He further contends the ALJ improperly gave great weight to the opinions of Plaintiff's non-examining medical experts.

A court must give a treating physician's testimony substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted). An ALJ may reject the opinion of any physician when the evidence, as a whole,

supports a contrary conclusion. *Bloodsworth*, 703 F.2d at 1240.

I find no error in the ALJ's evaluation of Plaintiff's treating and consultative physicians. Initially, I note Plaintiff incorrectly states the ALJ failed to evaluate the Baycare Report. The ALJ mentioned Plaintiff was treated at "Baycare the Harbor for depression with some suicidal ideation, but no opinion was provided from this center establishing a more restrictive RFC for th[e] claimant." (Tr. 17). Thus, the ALJ credited Plaintiff's treating physician's diagnosis, and found it was consistent with his RFC assessment. As for the Easter Report, although the ALJ did not refer or give weight to this medical record, the report was inconsequential to the ALJ's decision. Much like the rest of the medical evidence, the report diagnosed Plaintiff with Major Depression disorder, bipolar disorder, and gastric bypass. On Plaintiff's mental status, the report concluded Plaintiff had normal speech, thought process, and no delusions or hallucinations. Thus, the Easter Report actually supports the ALJ's findings. Further, as a one-time evaluation, the ALJ does not have to give the Easter Report much weight. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (holding a one-time examiner is not considered a treating physician; therefore, his or her opinions are not entitled to deference). Thus, any error by the ALJ to not include the report would be harmless. *See Caldwell v. Barnhart*, 261 Fed.Appx. 188, 190 (11th Cir. 2008) (holding the ALJ failure to consider a consultative physician's medial report was harmless error because it would not have changed the result of the case); *see also Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ error is harmless when it does not impact the determination of disability). I also find the ALJ's consideration of the medical evidence

and decision to give the consulting doctors' opinions "great weight" appropriate. The Eleventh Circuit does not prohibit consideration of consulting doctors' opinions and has allowed reliance on such opinions in the past. *See Wainwright v. Commissioner*, 2007 WL 708971, at * 2 (11th Cir. 2007). The regulations provide that although the ALJ is not bound by State agency medical consultant findings, he is required to consider such findings as opinion evidence because such consultants are "highly qualified physicians…who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I).

Here, the ALJ summarized the medical evidence as a whole before reaching his disability determination. In given great weight to the State agency doctors, the ALJ explained that "[a]lthough those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve weight, particularly in a case like this in which there exists a number of other reasons to reach similar conclusions." (Tr. 18). The ALJ further explained that after reviewing the record he could find no restrictions recommended by his treating doctor, Dr. Hanna or any other treating physician. In fact, Dr. Hanna had reported generally normal findings. He also found Dr. Bingham and Dr. Young's consultative exams supported the State agency doctor's determinations. Thus, he credited the State agency doctors. As such, I find no error in the ALJ giving more weight to the State agency doctors.

### 7. *proffering interrogatories*

In Plaintiff's next argument, he asserts the ALJ violated due process by failing to

13

proffer Dr. Fuess's interrogatories to his representative and by failing to provide time to object to the same. The Commissioner responds that Plaintiff had every opportunity to object to Dr. Fuess's interrogatories at the administrative hearing when the ALJ proffered Dr. Fuess's interrogatories as an exhibit.

Procedural due process under the Fifth Amendment requires the Court to provide disability claimants a "full and fair hearing." *Hepp v. Astrue*, 511 F.3d 798, 804 (8th Cir. 2008). When the Secretary relies on reports that are submitted post hearing or that has not afforded Plaintiff time to object, the Secretary commits reversible error. *See Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981)(holding reliance on physicians reports post hearing "where the claimant was afforded no opportunity to subpoena and cross-examine the declarant" was reversible error).

I agree with the Commissioner that the ALJ provided the Plaintiff an opportunity to object to Dr. Fuess's report. At the hearing, the ALJ asked whether Plaintiff's representative had any objections to the proposed exhibits, which included Dr. Fuess's interrogatories labeled exhibit 17F. Plaintiff had no objection, and the ALJ admitted the interrogatories into evidence. Thus, if the Plaintiff had any objection to make, he could have made it at the administrative hearing. The ALJ did not commit any error here.

### 8. developing the record

The Plaintiff next argues the ALJ failed to properly develop the record because he failed to re-contact Plaintiff's treating physician's to resolve questions the ALJ had related to the physician's opinions. The Commissioner defends stating the ALJ expressly

acknowledged and fulfilled his duty to develop the record by ordering multiple consultative exams and requesting interrogatories.

In a social security case, although the claimant bears the burden of providing medical evidence showing she is disabled, the ALJ is charged with developing a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ has this basic obligation to develop a full and fair record without regard for whether the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Cowart*, 662 F.2d at 735 (11th Cir. 1981). When the Plaintiff demonstrates that the record reveals evidentiary gaps that result in unfairness or "clear prejudice," remand is warranted. *Brown*, 44 F.3d at 935; *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (stating that the claimant must show some prejudice before a court will order a remand to the Commissioner for further development of the record).

The ALJ had no need to re-contact Plaintiff's treating physicians. I see no indication by the ALJ that he was confused by the treating physicians' findings. The ALJ made clear findings relating to Dr. Hanna, Community Hospital, and Baycare. The ALJ noted that Dr. Hanna found Plaintiff's physical examinations were normal throughout all systems and Dr. Hanna had not imposed any restrictions. He also confirmed Plaintiff was seen at Community Hospital whose records indicated his surgery was uneventful, and mental health examinations showed normal results. As explained above, the ALJ also took into consideration Plaintiff's treatment at Baycare. Further, as the Commissioner notes, the ALJ acknowledged his duty to develop the record when he found little evidence related to

Plaintiff's severe impairments and appropriately ordered three consultative examinations by Dr. Bingham, Dr. Young, and Dr. Kanakis. He also sent medical interrogatories to Dr. Fuess. Accordingly, I find that the ALJ satisfied his duty to properly develop the record.

### *9. 11th Circuit pain standard*

Next, Plaintiff contends that the ALJ failed to follow the 11th Circuit pain standard when he concluded the Plaintiff was not credible concerning his pain allegations. Plaintiff argues, due to the ALJ's failure to properly evaluate Plaintiff's complaints of pain, his symptoms should be deemed true as a matter of law. In response, the Commissioner argues that the ALJ articulated good reasons to find Plaintiff's subjective complaints not entirely credible.

The regulations dictate how the Commissioner evaluates pain. The Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529 and 416.929. "Objective evidence" means medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. §§ 404.1529. "Other evidence," as that term is used here, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1512(b)(2)-(6) and 416.912(b)(2)-(6). The Eleventh Circuit pain standard incorporates this scheme by requiring: evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of

16

such a severity that it can be reasonably expected to give rise to the alleged pain. *Foote v. Chater,* 67 F.3d 1553, 1560-61 (11th Cir. 1995); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). Indeed, in certain instances, pain alone can be disabling even if unsupported by objective evidence. *Foote* at 1561. If the ALJ decides not to credit Plaintiff's testimony, he must articulate explicit and adequate reasons for doing so. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

In this instance, the ALJ properly found there was no objective medical evidence establishing Plaintiff's alleged symptoms would reasonably expect to cause disabling pain. In applying the pain standard, the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. The ALJ based this opinion on Plaintiff's own statements regarding his abilities as well as the objective medical evidence and other evidence of record. For example, although Plaintiff alleges since his alleged onset date of January 1, 2002, his impairments have resulted in ulcers, constant vomiting, and leg pain, the ALJ found the record devoid of any evidence showing medical treatment of Plaintiff until 2007. And the subsequent medical evidence failed to indicate that Plaintiff had any restrictions due to these symptoms other than what the ALJ assessed in his RFC. The ALJ also found Plaintiff was able to handle his activities of daily living, which suggested he could work at the given level assessed. Finally, the ALJ explained he further discredited the Plaintiff's complaints due to the claimant's criminal convictions. I find no fault with the

17

ALJ's consideration of these factors in assessing Plaintiff's credibility.

   *10. lay testimony*

Lastly, Plaintiff asserts that the ALJ improperly discredited the testimony of Plaintiff's wife for not having a medical background and for her close relationship with Plaintiff. Plaintiff further asserts that the ALJ erred by ignoring other lay testimony of Plaintiff's mother and father.[5] The Commissioner denies the ALJ erred when evaluating the credibility of Plaintiff's wife as her statements were inconsistent with the medical record and are not entitled to any particular deference.

Social security regulations provide that "in addition to evidence from acceptable medical sources . . . [the ALJ] may also use evidence from other sources to show the severity of [Plaintiff's] impairment(s)." C.F.R. § 404.1513(d)(4); 416.913(d)(4). The Eleventh Circuit has held "testimony of family members is evidence of the claimant's subjective feelings of pain." *Osborn v. Barnhart*, 194 Fed.Appx. 654, 666 (11th Cir. 2006) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1553 (11th Cir. 1983)). However, an ALJ does not err by failing to discuss third-party statements if they are implicitly rejected by the ALJ's credibility determination of the claimant. *Id.*

Although the ALJ did not dissect the Plaintiff's wife's testimony, he adequately addressed the similar assertions in the Plaintiff's testimony and concluded it was not wholly credible because it was inconsistent with the weight of the medical evidence. Plaintiff's

---

[5] I can find no evidence in the record related to the testimony of Plaintiff's mother and father, nor does Plaintiff point to where that evidence is. Therefore, the Court can evaluate whether the ALJ erred by failing to discuss these lay opinions.

wife's testimony was basically that she had to take care of Plaintiff and that Plaintiff cannot do anything outside of the home. Thus, because the Plaintiff's wife's testimony merely reinforced and corroborated her husband's testimony, the ALJ also gave the Plaintiff's wife's testimony little weight. Hence, I find the ALJ did not err in his consideration of the Plaintiff's wife's testimony.

*D. Conclusion*

For the foregoing reasons, it is hereby

RECOMMENDED:

1. That the Plaintiff's complaint be dismissed and the Commissioner's decision be affirmed.

2. That the Clerk is directed to enter judgment for the Commissioner.

IT IS SO ORDERED in Tampa, Florida on January 28, 2013.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: The Honorable Steven D. Merryday